GARRISON, Judge.
This is an appeal from a judgment of the district court dated June 30, 1986, revoking and setting aside its prior judgment of May 14, 1986 which maintained a writ of attachment against two trusts. From that judgment, the plaintiff-creditor appeals.
Stephen L. Read, presently a resident of Darien, Connecticut, was involved in litigation involving a 1986 Learjet Model 24 bearing F.A.A. Registration Number N660A in the 17th Judicial Circuit Court for Broward County, Florida, case No. 83-03108CW, entitled Warren M. Francis, Jr. v. L.M.C. Leasing Inc. and Stephen L. Read. In that case, both parties stipulated to the following which was made the judgment of the court:[1]
“IT IS ADJUDGED that Plaintiff, WARREN M. FRANCIS, JR., recover from Defendants, L.M.C. LEASING, INC. and STEPHEN L. READ, jointly and severally, the sum of Three Hundred Ninety Thousand ($390,000.00) Dollars.
Execution shall not issue unless and until a default on the obligations herein-below set forth has occurred and then, execution shall issue upon the ex parte filing of a Motion for Execution.
Should execution be necessary and this Judgment enforced through subsequent judicial proceedings and post judgment remedies, the Plaintiff shall be entitled to reasonable attorneys’ fees and costs to be assessed by this Honorable Court upon motion and Notice of Hearing, should same exceed $20,000.00.
If the Defendants, or either of them, pay the obligation as hereinbelow set forth in a timely fashion, said obligation being in the full amount of Three Hundred Seventy Thousand ($370,000.00) Dollars, then, upon the payment of the last installment, the Plaintiff shall execute the full satisfaction of judgment of this judgment.
The Defendants, L.M.C. LEASING, INC., and STEPHEN L. READ, shall execute a promissory note in the principle amount of Three Hundred Seventy Thousand ($370,000.00) Dollars said note bearing interest at 15% per annum. That note will be guaranteed by LAUDER-DALE MOTOR CAR CORPORATION, CONTINENTAL CARS, INC., and PATRICIA READ, wife of defendant, STEPHEN L. READ. These guarantees shall be absolute, and the guarantors shall have joint and several liability.*
The aforedescribed promissory note shall be completely paid in twelve calendar months from July 15, 1983.
*612 There shall be no grace period for any of the monthly installment payments which are due on the 15th of each succeeding month beginning July 15, 1983. If any installment payment has not been received by Plaintiff, WARREN M. FRANCIS, JR., by the 15th of each month, then upon ex parte filing of a Motion for Execution, execution shall issue.
The aforesaid guarantors, namely LAUDERDALE MOTORCAR CORPORATION, CONTINENTAL CARS, INC. and PATRICIA READ, have been pledged as an inducement to the Plaintiff, WARREN M. FRANCIS, JR., to stipulate to this Final Judgment and it is for this reason that the Plaintiff, WARREN M. FRANCIS, JR., has entered into this Stipulated Final Judgment.
The Defendant, STEPHEN L. READ, is presently obtaining certain funds in the approximate amount of Two Hundred Twenty Thousand ($220,000.00) Dollars obtained from Century Financing of St. Louis, Missouri, to assist in payment of funds towards the satisfaction of this Judgment. If any such monies are paid through Century Financing relative to the aircraft which is the subject matter of this litigation, namely a 1968 Learjet Model 24, manufacturer’s serial number 155, bearing F.A.A. Registration Number N660A, the amount of this Judgment will be decreased by the amount of money actually paid by L.M.C. LEASING, INC. and/or STEPHEN L. READ.
The purpose of this Stipulated Final Judgment apart from and in addition to vesting certain financial rights that the Plaintiff, WARREN M. FRANCIS, JR., has, is to protect the Plaintiff from having to bring future litigation should the Defendants, L.M.C. LEASING, INC., STEPHEN L. READ, or any of the Guarantors aforedescribed, namely LAUDER-DALE MOTORCAR CORPORATION, CONTINENTAL CARS, INC. and PATRICIA READ, default any of the payments.
This Court reserves jurisdiction over this entire matter to enter any orders, deficiency judgments, any assessments of attorneys’ fees, costs, or any other aspect of this litigation until the obligation of the Defendants, and each of them, have to WARREN M. FRANCIS, JR., and a Satisfaction of Judgment, duly executed by the Plaintiff, WARREN M. ERANCIS, JR., has been filed and recorded of record.
DONE AND ORDERED in Chambers at Fort Lauderdale, Broward County, Florida, this 29th day of June, 1983. * The guarantees shall be secured by UCC-1 security filings in Florida and Tennessee.” [Initialed]
Despite his concurrence in the jointly stipulated judgment, Stephen Read failed to comply with any of the directives of the judgment. Accordingly on September 1, 1983 the Florida court entered the following order enforcing its own judgment:
“THIS CAUSE came on to be heard upon the plaintiff, WARREN M. FRANCIS, JR.’S Motion to Enforce Final Judgment, this Court noting that it has continuing jurisdiction pursuant to the terms of the Final Judgment. Having reviewed the Final Judgment entered in this matter on June 29, 1983, being advised that the defendant, STEPHEN L. READ, has not had Lauderdale Motorcar Corporation or Continental Cars, Inc. execute UCC-1 security agreements pursuant to the terms of the Final Judgment, having been advised that presently Lauderdale Motorcar Corporation has filed bankruptcy proceedings in Federal Bankruptcy Court, having heard argument of counsel and being otherwise fully informed in the premises, it is
ORDERED AND ADJUDGED that the plaintiff, WARREN M. FRANCIS, JR.’S Motion to Enforce Final Judgment be and the same is hereby granted and that the defendant, STEPHEN L. READ, as President of Continental Cars, Inc. execute the UCC-1 security agreement by the close of business on Wednesday, September 7, 1983, or, at the deposition in aid of execution of the defendant, STEPHEN L. READ, whichever date be earlier. Since Lauderdale Motorcar Corporation is presently in bankruptcy, the *613 automatic stay provisions of the Bankruptcy Court would be in force and effect and hence, the defendant, STEPHEN L. READ, as President of Lauderdale Motorcar Corporation can not be directed to execute the UCC-1 security agreement for Lauderdale Motorcar Corporation.
This Court retains jurisdiction to determine reasonable attorneys’ fees for the bringing of this post trial motion.”
On that same day, the Florida court also issued a writ of execution on the $390,-000.00 that Read owed:
“THIS CAUSE came on to be heard upon the plaintiff, WARREN M. FRANCIS, JR.’S Motion for Writ of Execution. The Court has reviewed the Final Judgment and noted that execution would not issue unless there was a default in the obligations as set forth in the Final Judgment. The Court being advised that a default in the obligations has occurred, having heard argument of counsel and being otherwise fully informed in the premises, it is
ORDERED AND ADJUDGED that the plaintiff, WARREN M. FRANCIS, JR.’S Motion for Writ of Execution be and the same is hereby granted and a Final Judgment having been duly entered and recorded June 29, 1983, in the amount of $390,000.00, LET EXECUTION ISSUE this 1st day of September, 1983.”
Having been informed that Read had an interest in property in this state, Francis filed a petition for recognition of his foreign judgment, for appointment of an attorney to represent a nonresident defendant and for a writ of attachment. An attorney was appointed to represent Read and interrogatories were issued to the major banks in this area.
On January 27, 1986 the Civil District Court for the Parish of Orleans signed an order recognizing the foreign judgment as follows:
“IT IS ORDERED that there be judgment herein in favor of plaintiff, Warren M. Francis, Jr., and against the defendant, Stephen L. Read, recognizing the Judgment of the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida and making said Judgment the Judgment of this Court.”
Accordingly, the Florida judgment now has the full power and authority of a Louisiana district court judgment.
In the course of this litigation, Francis located two trusts in which Read has an interest and commenced garnishment proceedings. The trustee filed answers to the Garnishment interrogatories and Francis filed a “Rule to Determine [the] Non-Exempt Portion Of The Garnished Trusts.”
On May 14, 1986, the district court rendered the following judgment on the rule:
“IT IS ORDERED, ADJUDGED AND DECREED that the writ of attachment herein be maintained and that the lien and privilege, resulting from the attachment and garnishment on all property herein attached and garnished, be recognized.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the garnishee, Henry J. Read, Trustee of the SLR Trust and The Read Children’s Trust of which defendant, Stephen Read, is a named income beneficiary, deduct and remit the portion of net annual income to be distributed to defendant from each trust in excess of the $20,000.00 statutory exemption from seizure by a creditor as provided by La.R.S. 9:2004.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the garnishee, Henry J. Read, remit any distribution entitled to be received by the defendant, Stephen L. Read, free from trust as provided in paragraph 10 of the SLR Trust.”
On May 19, 1986, the trustee filed an “Application for Reconsideration” seeking to have the court reconsider its judgment. On June 30, 1986, the court responded as follows:
“IT IS ORDERED, ADJUDGED AND DECREED that garnishee and trustee’s Application for Reconsideration herein is hereby granted and that ■ the Court’s judgment rendered in open court on May *614 9, 1986, and signed in Chambers on May 14, 1986, in which a writ of attachment was maintained against the spendthrift trusts in question is hereby revoked and set aside.”
The trial court did not provide written reasons for either judgment. Prom the June 30th judgment, Francis appeals.
On November 24, 1976 A. Louis Read and Nathalie Owens Read by authentic act before Omer F. Kuebel, Jr. N.P. placed 8500 shares of Royal Street Investment Corp. common capital stock and 550 shares of Interchange Realty Co. Inc. common capital stock into the thus created trust. This trust is scheduled to terminate in 1991 or in 4 years. Paragraph 5 of this trust (hereinafter the “Read Children’s Trust”) provides:
“The interest of the Beneficiaries herein shall be subject to the maximum restraint on alienation, voluntary or involuntary, permitted by the Louisiana Trust Code.”
The “maximum restraint on alienation ... permitted by the Louisiana Trust Code” is found at R.S. 9:2001 et seq.:
“Sec. 2001. General Rule
A beneficiary may transfer or encumber the whole or any part of his interest unless the trust instrument provides to the contrary.
Sec. 2002. Restraint upon alienation
The trust instrument may provide that the interest of a beneficiary shall not be subject to voluntary or involuntary alienation by a beneficiary. A restraint upon voluntary alienation by a beneficiary is valid. But a restraint upon involuntary alienation by a beneficiary is subject to the limitations prescribed by this subpart.
Sec. 2004. Seizure by creditor; general rule
A creditor may seize only:
(1) An interest in income or principal that is subject to voluntary alienation by a beneficiary; and
(2) The portion of the net annual income in excess of the amount that will give a beneficiary an aggregate net income of twenty thousand dollars from all spendthrift trusts and from all other trusts under which alienation by a beneficiary of his interest is restricted; and
(3)A beneficiary’s interest in income and principal, to the extent that the beneficiary is a settlor of the trust.
Sec. 2005. Seizure by creditor; special claims
Notwithstanding any stipulation in the trust instrument to the contrary, the proper court, in summary proceedings to which the trustee, the beneficiary, and the beneficiary’s creditor shall be parties, may permit seizure of any portion of the beneficiary’s interest in trust income and principal in its discretion and as may be just under the circumstances if the claim is based upon a judgment for:
(1) Alimony, or maintenance of a person whom the beneficiary is obligated to support;
(2) Necessary services rendered or necessary supplies furnished to the beneficiary or to a person whom the beneficiary is obligated to support; or
(3) An offense or quasi-offense committed by the beneficiary or by a person for whose acts the beneficiary is individually responsible.
Sec. 2007. Use of words ‘spendthrift trust’
A declaration in a trust instrument that the interest of a beneficiary shall be held subject to a ‘spendthrift trust’ is sufficient to restrain alienation by a beneficiary of the interest to the maximum extent permitted by this Sub-part.” (Emphasis Added).
Thus it is apparent that the maximum restraint on involuntary alienation under the Trust Code is found at R.S. 9:2004, which provides that a creditor may seize (1) any principal or income subject to voluntary alienation by the beneficiary and (2) the net annual income portion in excess of an aggregate net annual income of $20,000 from all trusts and (3) any principal or interest to the extent that a beneficiary is a settlor of the trust. Accordingly, the trial court’s initial ruling on this issue is correct and he erred in reversing that ruling.
*615 On December 22, 1980 before Brian Left-wich, N.P. Nathalie Owens Read and Alexander Louis Read placed into trust 176 shares of Royal Street Corp. common stock for Stephen Read in the SLR Trust thereby created. The SLR Trust terminates when both Settlors have died or upon Stephen Read reaching age thirty-five, whichever occurs later.
Section 9.1 of the SLR Trust instrument provides as follows:
“9.1 Each trust shall be held subject to the maximum restraint on voluntary and involuntary alienation by the beneficiary permitted by the provisions of the Louisiana trust code.”
Thus as per the previous discussion, the maximum restraint is found at R.S. 9:2004. Accordingly, a creditor may seize (1) any corpus or income subject to voluntary alienation by the beneficiary and (2) the net annual income portion in excess of an aggregate net annual income of $20,000.00 from all trusts and (3) any corpus or income to the extent that a beneficiary is a settlor of the trust. Thus, the trial court’s initial ruling was correct and the judge erred in reversing that ruling.
The SLR Trust also provides at section 10.3 that the beneficiary has the right to voluntarily alienate from the trust any inter vivos gifts made that year to the trust up to $6,000.00 per calendar year. That section reads:
“10.3 Each beneficiary shall have the absolute right, upon making written demand upon the Trustee, to receive from the Trustee outright and free from trust all or any part or any portion of any property transferred or added to his/her trust by way of inter vivos gifts which occur during any year; however, if any property so demanded by any beneficiary shall have been sold or otherwise disposed of by the Trustee prior to receipt by the Trustee of written demand therefor, then in lieu of such property, the Trustee shall distribute other assets to the beneficiary equal in value to the value of the property so demanded on the date of such demand; further provided, however, that the distributions to the beneficiary pursuant to this Section shall not aggregate more than $6,000.00 in value during any calendar year. I direct the Trustee, immediately upon receipt by him of any property by way of an inter vivos gift to any trust, to give written notice of the receipt of such gift and of the beneficiary’s demand rights under this Section to the beneficiary. Notwithstanding the foregoing, this demand right of the beneficiary shall be non-cumulative and shall lapse 30 days after receipt by the beneficiary of the notice hereinabove required.”
Accordingly, these amounts would be subject to seizure under R.S. 9:2004(1). Thus, the trial court erred in reversing its prior judgment which so held.
Defendant Read also argues a timing question, namely that seizure of the excess amounts should not occur while those amounts are in the trustee’s hands but only after they have been delivered to the beneficiary. This interpretation is clearly viola-tive of the language of 2004 which discusses “income or principal.” “Income or principal” clearly contemplates trust corpus. Once money is in the hands of the beneficiary it would cease to be “income or principal” because it would have already ceased to be encumbered as trust corpus. If defendant’s argument were correct, there would be no need for 2004 at all because money in the hands of the debtor is seized under the general provisions for seizure and garnishment. This argument is without merit.
For the reasons discussed, the June 30, 1986 judgment of the district court is reversed and the May 14, 1986 judgment is reinstated.
REVERSED AND REINSTATED.

. Presumably this represented a settlement.